MATTHEW Z. CROTTY
Crotty & Son Law Firm, PLLC
905 West Riverside, Suite 404
Spokane, WA 99201-0300
Telephone: (509) 850-7011

MICHAEL B. LOVE
Michael Love Law, PLLC
905 West Riverside, Suite 404
Spokane, WA 99201-0300
Telephone: (509) 212-1668

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DOUGLAS KUYKENDALL, | Case No. |
| Plaintiff, | **COMPLAINT & DEMAND FOR JURY TRIAL** |
| vs. | |
| LES SCHWAB TIRE CENTERS OF WASHINGTON, INC., | |
| Defendant. | |

The Plaintiff, DOUG KUYKENDALL, by and through MATTHEW Z. CROTTY, of CROTTY & SON LAW FIRM, PLLC, and MICHAEL LOVE of MICHAEL LOVE LAW, PLLC complains of Defendant and alleges as follows:

## I.  PARTIES, JURISDICTION, & VENUE

1.    Plaintiff DOUGLAS KUYKENDALL was employed by the above-captioned Defendant during the time-frame relevant to this lawsuit and worked in Spokane County, Washington, on behalf of Defendant.

1.    Defendant, LES SCHWAB TIRE CENTERS OF WASHINGTON, INC. ("Les Schwab") is a Washington Corporation that is licensed to conduct business in the State of Washington.  Les Schwab maintains numerous places of business in Spokane, Washington.

2.    The Federal Court for the Eastern District of Washington has jurisdiction over this case pursuant to 28 U.S.C. 1331 as it relates to Mr. Kuykendall's Americans with Disabilities Act (ADA) claims and 28 U.S.C. § 1367(a) as it relates to Mr. Kuykendall's Washington Law Against Discrimination (WLAD) and wrongful discharge in violation of public policy claims.

3.    Venue is proper in this district because, *inter alia,* Defendant conducts business in Spokane County, and the acts and omissions giving rise to Mr. Kuykendall's complaint took place in Spokane County, Washington.

4.    Mr. Kuykendall properly exhausted the administrative prerequisites necessary to bring his ADA claims. Mr. Kuykendall timely (i.e. within 180 days of his discharge) filed a charge of discrimination with the EEOC, received a right to sue

letter on April 14, 2020, and commenced this action within 90 days of having received the right to sue letter.

## II. FACTS

5.      Mr. Kuykendall incorporates the above facts as if pled verbatim herein.

6.      Les Schwab hired Mr. Kuykendall on or about March 10, 1999.

7.      During the course of Mr. Kuykendall's twenty-year career at Les Schwab he received no discipline, was never put on a performance improvement program, and received pay raises and promotions.

8.      Although Mr. Kuykendall's 20+ year workplace performance was more than satisfactory, he had three things working against him: his disabled daughter, his age, and his record of being treated for a disability and the attendant workers' compensation claim relating to that disability.

9.      At all times relevant to this lawsuit Les Schwab insured Mr. Kuykendall and his family.

10.     Mr. Kuykendall's daughter has Crohn's disease.

11.     Treatment of Mr. Kuykendall's daughter's disability requires Les Schwab, by and through its insurer, to pay over $9,000 every other week for the shots necessary to treat her disability.

12.     At the time of his termination Mr. Kuykendall was over 40 years of age.

13.    And as an elderly employee of Les Schwab, Mr. Kuykendall qualified for a series of seniority related employment benefits. Those benefits included family medical benefits, life insurance, group accident insurance coverage, and a retirement plan projected to pay Mr. Kuykendall in excess of $1,000,000.00 in the event he worked for Les Schwab through age 65.

14.    On or about November 5, 2018, Mr. Kuykendall injured his back while at work.

15.    From November 5, 2018 through early January 2019, Mr. Kuykendall worked for Les Schwab in a light duty capacity.

16.    In early January 2019, Mr. Kuykendall received a cortisone injection as part of the medical treatment regime for his injured back. Shortly after receiving that shot Mr. Kuykendall's right leg began to give out.

17.    Nonetheless, Mr. Kuykendall drove to work for his next scheduled shift. Mr. Kuykendall arrived at the parking lot, got out of his car, and hobbled to the Les Schwab facility where he worked. That facility was located at 411 N. Dyer, Spokane Valley, Washington (hereinafter "Dyer Store"). Once Mr. Kuykendall got inside his supervisor, John Merriott, noticed that Mr. Kuykendall could barely walk. Accordingly, Mr. Merriott called Human Resources who, in turn, sent Mr. Kuykendall home until he could fully recover.

COMPLAINT & DEMAND FOR JURY TRIAL - 4

18.    From January 2019 – August 2019 Mr. Kuykendall underwent medical treatment necessary to treat his disability caused by the back injury at work.

19.    Mr. Kuykendall's disability-related medical treatment cost Les Schwab increased workers' compensation payments.

20.    On or about August 8, 2019, Mr. Kuykendall returned to work in a light duty capacity.

21.    On or about September 13, 2019, Mr. Kuykendall was released to return to work without any restrictions.

22.    On or about September 26, 2019, Les Schwab informed the employees at its Dyer Store that it would be closing that store. As part of the store closing process, Les Schwab management asked the employees of that store whether they wanted to continue to work for Les Schwab.

23.    Mr. Kuykendall made clear that he intended to continue his employment with Les Schwab. Since Les Schwab supposedly did not have any positions available in Spokane for Mr. Kuykendall to transfer into, the company instead offered him a truck driver position based out of Boardman, Oregon. Mr. Kuykendall, intent on staying employed with Les Schwab, began looking for apartments to rent in Boardman and started taking the steps necessary to get his commercial driver's license.

24.    Since Les Schwab was closing its Dyer Store, discussion ensued about

what to do with, among other things, a six-to-ten-year-old never used air compressor (hereinafter "the compressor").

25.    Mr. Kuykendall knew that the compressor was old and never used because for years that device sat in the store's storage area collecting dust. Indeed, at one point Mr. Merriott told Mr. Kuykendall that he (Merriott) had tried to ship the compressor back to Les Schwab's headquarters in Prineville, Oregon only to be told by Dave Twiss (a Les Schwab official in Prineville) that the company didn't want the compressor.

26.    To that end, Mr. Merriott (the above-referenced Store Manager) and Jeremy Stevens (the Assistant Store Manager) told Mr. Kuykendall that he (Mr. Kuykendall) could and should take the unwanted compressor home.  Mr. Kuykendall twice asked whether he needed to pay for the compressor but was told "no."

27.    Being given the excess/unused compressor was consistent with prior practice. Indeed, years earlier Mr. Kuykendall's former Store Manager, Donny Stevens, gave Mr. Merriott an Oliver Brand tire builder machine.

28.    Since Mr. Kuykendall's two supervisors made clear that he could take the compressor and since Mr. Kuykendall understood that it was company practice to allow employees to take excess/unused equipment if given permission from management, Mr. Kuykendall took the compressor home.

COMPLAINT & DEMAND FOR JURY TRIAL - 6

29.    A few days after taking the compressor home (early October 2019) Mr. Kuykendall's wife, Kelli, told Mr. Kuykendall that she didn't want the compressor cluttering their storage space. Mr. Kuykendall then (on or about October 1st) spoke with Mr. Merriott and told Mr. Merriott that he wanted to return the compressor. Mr. Merriott told Mr. Kuykendall words to the effect of "you can't bring it back to the store but you can bring it to Jeremy's house."

30.    On October 7, 2019, Mr. Kuykendall, while at work, was called into a private office room. In that room stood Corey Adamson (Mr. Merriott's boss) and a person from Les Schwab's corporate office who, upon information and belief, is named Larry Gerke.

31.    Mr. Adamson and Mr. Gerke mentioned that someone had made an "anonymous tip" regarding the compressor, claimed that they were "investigating the matter," and proceeded to ask Mr. Kuykendall about the compressor. Mr. Kuykendall told Mr. Adamson and Mr. Gerke about how he acquired the compressor and made clear that at no time did he (Mr. Kuykendall) believe he was stealing from the company or in possession of stolen property. Mr. Kuykendall reiterated that had he known it was inappropriate for him to take the compressor, he would not have done so. When Mr. Kuykendall got done describing what happened, Mr. Gerke said, "We believe you; you are telling the truth."

32.     Having never been in a situation like this, Mr. Kuykendall pleaded with management that he be allowed to keep his job. In addition to begging to keep his job Mr. Kuykendall told management words to the effect of "my family's health care really depends on the insurance Les Schwab provides. My daughter has Crohn's and needs shots that cost $9,000 every few weeks."

33.     In response to Mr. Kuykendall's plea for mercy, Mr. Gerke responded words to the effect of "you are only on a three-day suspension, and your benefits won't be effected."

34.     On October 10, 2019, Les Schwab fired Mr. Kuykendall. Les Schwab's stated reason for terminating Mr. Kuykendall's employment was the he violated "company policy." When Mr. Kuykendall asked the Les Schwab managers (Brad Horst and another unidentified manager) who delivered the termination message what policy he supposedly violated, the response was words to the effect of "we don't know but John shouldn't have given you the compressor." In the same breath, management told Mr. Kuykendall that he was eligible for re-hire January 1, 2020. After being told he was eligible for re-hire, Mr. Kuykendall asked if his benefits would be re-instated to which management responded "call HR."

35.     On October 11, 2019, Mr. Kuykendall's daughter went to the doctor to receive medical treatment necessary to treat her Crohn's disease. In this instance the

COMPLAINT & DEMAND FOR JURY TRIAL - 8

medical treatment included a follow up examination and a flu shot as Mr. Kuykendall's daughter was exhibiting signs of pneumonia which, in turn, could be fatal as individuals on Humira (a medication Mr. Kuykendall's daughter was on to treat Crohn's) have weakened immune systems. At that doctor's appointment Mr. Kuykendall's daughter was told that her insurance coverage was cancelled on October 8, 2019.

36.    On October 11, 2019, Mr. Kuykendall contacted Les Schwab's HR department and learned that he was not eligible for rehire.

37.    On October 14, 2019, Ms. Kuykendall called Les Schwab HR at 1-888-821-4440 and spoke to Jamie (last name unknown). Jamie told Ms. Kuykendall that Mr. Kuykendall (and daughter's) insurance coverage terminated the day of the termination, here October 10, 2019. Jamie could not give Ms. Kuykendall an answer as to why insurance coverage terminated two days before Mr. Kuykendall's October 10, 2019, termination. Since that was the case, Jamie transferred Ms. Kuykendall to another Les Schwab HR employee named Kristen (last name unknown).

38.    Ms. Kuykendall relayed the above-information to Kristen and also asked Kristen about Mr. Kuykendall's re-hire status. Ms. Kuykendall told Kristen that his store management told Mr. Kuykendall that he was eligible for re-hire on January 1, 2020, but when Mr. Kuykendall talked to HR on October 11, 2019, HR informed Mr.

Kuykendall that he was not eligible for rehire. After hearing about the discrepancy, Kristen told Ms. Kuykendall that "what happened with Doug did not seem right."

39.    During the October 14, 2019, call with HR, Mr. Kuykendall asked if Les Schwab had any policies that addressed whether workers could take home unused/surplus equipment to which Kristen said words to the effect of "No, it's up to the manager. There's nothing in writing."

40.    Les Schwab also fired Mr. Merriott as a result of the compressor incidence. Mr. Merriott is over 40 years of age and had a history of making workers' compensation claims.

41.    Les Schwab did not, however, terminate Mr. Steven's employment. Mr. Stevens is younger than Mr. Kuykendall and Mr. Merriott and, upon information and belief, has no history of making workers compensation claims.

42.    Indeed, Les Schwab's professed "nondiscriminatory" termination of Mr. Kuykendall for violating a non-existent policy after an HR "investigation" that took place on October 7, 2019, is a cover up to mask unlawful discrimination and retaliation. Amongst other inconsistencies, Les Schwab cancelled Mr. Kuykendall's group accident insurance coverage on October 1, 2019—six days *before* the October 7, 2019 date when Mr. Gerke and Mr. Adamson interviewed Mr. Kuykendall to get his side of the story.   For Les Schwab, Mr. Kuykendall's firing was a foregone

conclusion; the compressor was used as an excuse to hide Les Schwab's unlawful activity. The same holds true for the cancellation of Mr. Kuykendall's daughter's insurance coverage on October 8, 2019, two days **before** Mr. Kuykendall's surprise termination.  Both insurance cancellations violated the promise management made to Mr. Kuykendall on October 7, 2019, that his benefits would not be affected because he was only being suspended for three days.  Additionally, Les Schwab's HR could not identify a single policy Mr. Kuykendall violated and, in fact, told Ms. Kuykendall as much, confirming that what happened to Mr. Kuykendall was wrong.

43.    Further, the closeness in time between Mr. Kuykendall being fully released to work after his medical leave and his termination is, in and of itself, sufficient to establish causation.

44.    What was Les Schwab's motive? Retaining employees who are elderly, disabled, have a history of getting injured, and/or have disabled family members costs Les Schwab more money than it would cost to retain young and healthy employees who have healthy family members.  In fact, the age of employees is typically the most significant factor in determining group health insurance premiums. Moreover, most employers who purchase workers' compensation insurance are subject to experience rating. This process looks at an employer's 'loss history' and affects the premium.

COMPLAINT & DEMAND FOR JURY TRIAL - 11

45.    Indeed, such elderly and disabled employees with disabled family members are liabilities that companies, like Les Schwab, are incentivized to minimize especially in the context of possible corporate merger or sale.

46.    On December 26, 2019, *USA Today* reported that Les Schwab had retained Goldman Sachs to assist Les Schwab in finding a buyer.

### III. CAUSES OF ACTION

47.    Mr. Kuykendall incorporates the above paragraphs as if pled verbatim herein.

### (Count One –
### – Retaliation for Making a Workers Compensation Claim)

48.    A party seeking to prove retaliation for making a workers' compensation claim must show that (A) he exercised his right to pursue workers' compensation benefits under Title 51 RCW; (B) he was discharged; and, (C) there is a causal connection between the exercise of the legal right and the discharge.

49.    Mr. Kuykendall made a workers' compensation claim.

50.    Mr. Kuykendall was subsequently discharged.

51.    A causal connection exists between Mr. Kuykendall's firing and his exercise of his rights under Washington's Workers' Compensation statute for the reasons set out above.

COMPLAINT & DEMAND FOR JURY TRIAL - 12

52.    Les Schwab's actions have caused Mr. Kuykendall damage in an amount to be proven at trial.

## (Count Two –Association Discrimination - ADA)

53.    To establish an "association discrimination" claim under the ADA a plaintiff must allege sufficient facts in his or her complaint to show that (1) the plaintiff was "qualified" for the job at the time of the adverse employment action; (2) the plaintiff was subjected to adverse employment action; (3) the plaintiff was known by his employer at the time to have a relative or associate with a disability; and (4) the adverse employment action occurred under circumstances raising a reasonable inference that the disability of the relative or associate was a determining factor in the employer's decision. *Giddens v. Mesquite Gaming LLC*, 2017 WL 8728163, at *2 (D. Nev. Apr. 25, 2017).

54.    Mr. Kuykendall was an employee of Les Schwab who was qualified to perform the job he was doing while working for Les Schwab.

55.    Mr. Kuykendall was fired, thus subjected to an adverse employment action.

56.    Les Schwab knew of Mr. Kuykendall's daughter's status as a beneficiary under Les Schwab's medical insurance plan. Indeed, Mr. Kuykendall told Les Schwab management, on October 7, 2019, that "my family's health care really depends on the

insurance Les Schwab provides. My daughter has Crohn's and needs shots that cost $9,000 every few weeks."

57.    And at or near this time (October 7, 2019) Mr. Merriott told the Les Schwab management investigating the incident that Mr. Kuykendall should not be fired or even disciplined for a decision that Mr. Merriott made.

58.    A causal connection exists for not only the above-stated reasons, but because Les Schwab fired Mr. Kuykendall *three days* after he told management that his family depended on the generous health care benefits Les Schwab paid on his disabled daughter's behalf but cancelled Mr. Kuykendall's insurance just *one day after* Mr. Kuykendall informed management that his family depended on the generous health care benefits Les Schwab paid on his disabled daughter's behalf.  Additionally, on October 7, 2019, management told Mr. Kuykendall that he was only being suspended for three days and that his benefits would not be effected during that time; however, Les Schwab cancelled Mr. Kuykendall's benefits on October 8, 2019 (if not earlier) and then reversed its decision and fired Mr. Kuykendall as opposed to subjecting him to a three day suspension.

59.    Les Schwab's actions have caused Mr. Kuykendall damage in an amount to be proven at trial.

COMPLAINT & DEMAND FOR JURY TRIAL - 14

**(Counts Three, Four, & Five –Age & Disability Discrimination - Violation of the ADA & Washington Law Against Discrimination RCW 49.60.180 & RCW 49.44.090)**

60.    In order to prove his age discrimination claim under the WLAD Mr. Kuykendall must prove that: (1) he was older than 40 years of age and performing his work satisfactorily; (2) was discharged; and (3) his age was a substantial (as opposed to the *only*) factor in the Defendant's decision to terminate his employment.

61.    Mr. Kuykendall was over 40 at the time of his firing, was performing work satisfactorily, and was fired. Mr. Kuykendall's age was a substantial factor in the firing for the reasons set out above and, in addition, Les Schwab fired Mr. Merriott (also over 40) but did not fire Mr. Stevens (younger than Mr. Merriott and Mr. Kuykendall).

62.    A disability discrimination claim, under the WLAD and ADA requires proof that the employee (A) had a record or history of a disability; (B) was performing work satisfactorily; (C) was discharged; and (D) a causal connection exists between the discharge and Mr. Kuykendall's record/history of a disability.

63.    Mr. Kuykendall had a record of being disabled, here being treated for the above-referenced medical condition. That record of treatment for that disability spanned the November 2018 – September 2019 timeframe. Mr. Kuykendall was performing his work satisfactorily. Mr. Kuykendall was fired. And a causal

connection exists between the termination and the record/history of being disabled.

64.    Les Schwab's actions have caused Mr. Kuykendall damages in an amount to be proven at trial.

## IV. PRAYER FOR RELIEF

Mr. Kuykendall respectfully seeks:

A. All damages allowed under the law including front pay, back pay, pre-judgment interest, adverse tax consequences, punitive damages (as allowed under the ADA), and general damages.

B. Attorneys' fees, costs, and litigation expenses as allowed under RCW 49.48.030, RCW 49.60.030, and the ADA.

C. A declaration that Defendants violated the WLAD, the common law relating to wrongful discharge, and the ADA.

D. All other relief that is just and equitable.

DATED this 15th day of April, 2020.

CROTTY & SON LAW FIRM, PLLC

By:    *Matthew Z. Crotty*
        Matthew Z. Crotty, WSBA No. 39284
        905 West Riverside Ave. Ste. 404
        Spokane, Washington 99201
        Telephone No. 509.850.7011

COMPLAINT & DEMAND FOR JURY TRIAL - 16

By:    *Michael B. Love*
Michael B. Love, WSBA No. 20529
905 West Riverside Ave. Ste. 404
Spokane, Washington 99201
Telephone No. 509.212.1668

Attorneys for Plaintiff