FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Apr 25, 2022

SEAN F. McAVOY, CLERK

1
2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

3
4

| | |
|---|---|
| DOUGLAS KUYKENDALL, | No.   2:20-cv-00154-SMJ |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| LES SCHWAB TIRE CENTERS OF WASHINGTON, INC., | |
| Defendant. | |

5
6
7
8
9
10

Before the Court is Defendant's Motion for Summary Judgment, ECF No. 54. This matter involves several discrimination or retaliation claims under both federal and Washington state law. Defendant moves for summary judgment on each of Plaintiff's claims, arguing that Plaintiff cannot show a genuine dispute of material fact on any claim. Having reviewed the relevant pleadings and the materials submitted by the parties, the Court is fully informed and grants the motion in part and denies it in part. Because Plaintiff cannot meet his burden to show a material dispute regarding his age discrimination claim, the Court grants Defendant summary judgment on this claim only. Defendant's motion is otherwise denied.

//

11
12
13
14
15
16
17
18
19
20

ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT – 1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

# BACKGROUND

## A.    Plaintiff's Employment with Defendant Les Schwab

Defendant Les Schwab Tire Centers of America ("Defendant") is a national tire retail company. Defendant hired Plaintiff Douglass Kuykendall ("Plaintiff") in March of 1999. After approximately two years performing retail customer service, Plaintiff transferred to Defendant's "retread shop"[1] in Spokane, Washington—where he worked until his termination in October of 2019. Defendant's retread shops are commonly referred to as "More Mile Shops." During his tenure at the Spokane More Mile Shop, Plaintiff was responsible for a variety of tasks—including tire inspection, repair, curing, and painting, but generally referred to himself as a production worker.

## B.    Plaintiff's Workers' Compensation and Medical Expense Claims

During his employment, Plaintiff filed at least two claims for workplace injuries. His first workplace injury (carpal tunnel syndrome) occurred in 2002. Due to this injury, Plaintiff received time loss benefits and medical expense benefits. Upon his return to work, Defendant provided Plaintiff with light duty assignment. Years later, in November of 2018, Plaintiff sustained a workplace lumbar disc herniation, for which he received the same benefits. This injury caused Plaintiff to

---

[1] A retread shop is a manufacturing site where employees replace worn treads on commercial tires. Retread shops are in a separate department from Defendant's retail stores.

ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT – 2

take medical leave for approximately seven months.[2] In total, Plaintiff received $56,519.53 in time loss benefits and medical expenses for this injury. He returned to work in August of 2019 and was again assigned light duty work. Plaintiff admits that upon his return to work and light duty assignment, he was not subject to any adverse consequences for having filed the workers' compensation claim. He was released to full duty work in either September or October of 2019.

While employed, Plaintiff and his children received medical benefits through Defendant's policy. Plaintiff's daughter suffers from Crohn's disease, a chronic condition she was diagnosed with in January of 2017. This ailment required that Plaintiff's daughter take regular shots of Humira—a drug that potentially costs up to $9,000 a week. In total, between 2015 and 2019, Defendant paid $104,027.30 toward Plaintiff's and his family's medical expenses. This amount was nearly twice the amount of expenses paid for the next highest claimant.

## C.    Defendant's Expense Tracking

Defendant admittedly pays a third-party administrator $30,000 per year to track the Company's high-cost claimants and benefit expenses. It is undisputed that

_____

[2] When employees take medical leave, they are placed on Defendant's "ADA list" until they return to work. While an employee is on leave, Defendant's committee meets to determine whether continuing the leave is a reasonable accommodation. It is undisputed that the entirety of Plaintiff's medical leave for his back injury was approved without incident. It is also undisputed that Plaintiff was placed on Defendant's ADA list at some point and was removed from the list upon his return to work.

ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT – 3

Humira, the drug Plaintiff's daughter required, is one of the medical expenses Defendant pays the third-party administrator to track. It is also undisputed that Plaintiff is considered a "high cost claimant" because "his and/or his families' medical expenses exceed[ed] $50,000 [per] year." Meanwhile, in general, Defendant's retirement expenses rose by 54 percent in 2017, and its medical, prescription, dental, and vision expenses increased by 7 percent.

## D.    Defendant's Policies

At all material times, Defendant maintained non-discrimination, non-harassment, and non-retaliation policies. Defendant also maintained a Code of Conduct ("Code") during Plaintiff's employment, which generally required all employees to act with honesty, integrity, and respect. The Code also provided that "[t]heft, sale, or bartering (trading for other items of value) of any Les Schwab property regardless of value is prohibited." It is undisputed that Plaintiff understood he was expected to act consistent with the Code and be honest and forthright in his dealings with the company.

## E.    Supervision structure

At all relevant times, Plaintiff was supervised by John Merriott, who was supervised by Corey Adamson. Mr. Adamson reported to Larry Gerke, the General

Manager of Prineville operations. Mr. Gerke reported to Ken Edwards,[3] the Vice President of the Supply Chain.

**F.    Closure of the Spokane More Mile Shop and the missing air compressor**

On September 23, 2019, Mr. Merriott informed the employees of the Spokane More Mile Shop that the Shop would be closing, and management would be visiting the Shop within the week to discuss the decision. Three days later, management announced the closure and informed the employees that it was consolidating its retreading operations to the production center in Prineville, Oregon. Though all employment at the Spokane More Mile Shop was scheduled to end on October 31, 2019, Defendant encouraged employees interested in staying with the company to apply at a different location.

Several weeks before the scheduled closure, on October 4, 2019, an unidentified employee reported that another employee had loaded a company air compressor onto his vehicle at the Spokane More Mile Shop and took it off the property. Several days later, Mr. Gerke and Mr. Adamson initiated an in-person investigation at the Shop and interviewed five employees, including Plaintiff and Mr. Merriott.

At some point during his interview, Mr. Merriott indicated that he was angry

---

[3] Mr. Edwards' job duties include analyzing company profit and loss. ECF No. 70 at 19. Though an uncontroversial assessment, Mr. Edwards agrees that cutting labor and benefit costs helps maximize Defendant's profits. *Id.* at 20.

about the Shop closing and admitted that he told Plaintiff to take the air compressor and to "consider it part of his severance package." Mr. Gerke and Mr. Adamson then interviewed Plaintiff, who admitted that he loaded the air compressor onto his vehicle using a company forklift and took it home, though he knew what he was doing "wasn't right." Plaintiff indicated that as he was driving off the property, he called Mr. Merriott and stated that he wanted to bring the air compressor back. Plaintiff never did so. Another employee, Mr. Strandberg, advised that Mr. Merriott asked if anyone wanted anything in the Shop; he also indicated that he saw the air compressor in Plaintiff's vehicle. Mr. Gerke and Mr. Adamson then interviewed Plaintiff a second time.

**G.    Discipline**

Upon concluding the investigation, Mr. Gerke suspended Plaintiff pending the company's determination of an appropriate discipline. Mr. Merriott, however, was terminated for violating Defendant's Policy Number 12, which is Defendant's Cash Control Policy that governs the control and custody of Defendant's cash and assets. When an employee is terminated for this policy violation, the employee is ineligible for rehire.

Meanwhile, Mr. Gerke and Mr. Adamson shared the results of their investigation with Mr. Edwards and Maureen Bedell, one of Defendant's compliance officers. ECF No. 70 at 13. Mr. Edwards elected to terminate Plaintiff's

ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT – 6

1    employment, effective October 8, 2019.[4] Upon review of Plaintiff's involvement in

2    taking the air compressor, Mr. Edwards determined that Plaintiff violated

3    Defendant's Code of Conduct, which prohibits theft of company property and

4    mandates employees act with honesty, integrity, and respect. A Code of Conduct

5    violation does not render the employee ineligible for rehire, but instead permits

6    rehire after some time. This difference in Plaintiff's and Mr. Merriott's disciplines

7    resulted from Mr. Edwards' determination that Plaintiff's discipline should be "less

8    severe" than Mr. Merriott's. ECF No. 70 at 15 ("We felt that [Mr. Merriot's]

9    termination should reach a different level than [Plaintiff's]"). Ms. Beddell's

10   testimony corroborates this determination, explaining that:

11           I believe that Les Schwab had some discretion to – for some leniency,
             and I believe that [Plaintiff] was shown – [Plaintiff] was shown
12           some leniency, and he was – he did commit the theft; the facts of the
             investigation determined that – but they wanted to give him an
13           opportunity to come back to work. So I believe that's what it was coded
             as a code of conduct.
14   *Id.* at 16.

15           On October 10, Mr. Fewkes and Mr. Horst, two management employees, met

16   with Plaintiff to discuss his termination. Mr. Fewkes advised Plaintiff that he had

17   violated Defendant's Code of Conduct by taking the air compressor and that he was

18

19   [4] But Mr. Edwards submits that in making the decision to terminate Plaintiff's
     employment, he was unaware of Plaintiff's medical needs and workers
20   compensation benefits. He similarly claims to have been unaware of the medical
     needs of Plaintiff's daughter.

ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT – 7

being terminated for this violation. Under Defendant's policy, an employee rehired within thirty days of termination retains any employee benefits, but employees rehired after thirty days are treated as new employees and do not retain their former benefits. ECF No. 54 at 6 *("A termination based on a Code of Conduct violation allows an employee to be eligible for rehire in the future, while a termination based on a Policy #12 violation renders an employee ineligible for rehire.")*.

 Plaintiff was informed that he was eligible for rehire on January 1, 2020, more than thirty days after Plaintiff's termination date. According to Mr. Edwards, this rehire date was based on "two factors:"

> One, he stole company property, and number two, there should be consequences for that. Therefore, by changing his eligibility, there was a financial impact to him about not being eligible for rehire. And I felt that that was the right message to send to the other employees that did not steal from the company and continued to work.

*Id.* at 17. During his termination meeting, Plaintiff stated that he would love to return to work when eligible. after January 1, 2020. *Id.*

\* \* \*

Plaintiff initiated this instant action on April 15, 2020. ECF No. 1. His Amended Complaint asserts both federal and state causes of action against Defendant: (1) Workers' Compensation Claim Retaliation under Washington state law, (2) Associational Disability Discrimination under the American with Disabilities Act ("ADA"), (3) Age and Disability Discrimination under the ADA

ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT – 8

and the Washington Law Against Discrimination, and (4) Employee Retirement Income Security Act ("Act) Retaliation. ECF No. 6. Defendant now moves for summary judgment on each claim.

## LEGAL STANDARD

The Court must grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party bears the initial burden of showing no genuine dispute of material fact exists because a reasonable jury could not find in favor of the nonmoving party. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 325 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 n.10, 587 (1986). If the moving party makes this showing, the nonmoving party then bears the burden of showing a genuine dispute of material fact exists because reasonable minds could differ on the result. *See Anderson*, 477 U.S. at 248–51; *Matsushita Elec. Indus.*, 475 U.S. at 586–87.

The nonmoving party may not rest upon the mere allegations or denials of its pleading and must instead set forth specific facts, and point to substantial probative

ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT – 9

evidence, tending to support its case and showing a genuine issue requires trial resolution. *See Anderson*, 477 U.S. at 248–49. The Court must enter summary judgment against the nonmoving party if it fails to make a showing sufficient to establish an element essential to its case and on which it would bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 322.

In ruling on a summary judgment motion, the Court must view the evidence in the light most favorable to the nonmoving party. *See Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). Thus, the Court must accept the nonmoving party's evidence as true and draw all reasonable inferences in its favor. *See Anderson*, 477 U.S. at 255. The Court may not assess credibility or weigh evidence. *See id.*

## DISCUSSION

**A.    Defendant is not entitled to summary judgment on Plaintiff's workers' compensation retaliation claim.**

Defendant moves for summary judgment on Plaintiff's Washington state workers' compensation claim, submitting that no triable issue exists. The Court disagrees.

### 1.    Prima facie case

Under Wash. Rev. Code § 51.48.025(1), "[n]o employer may discharge or in any manner discriminate against any employee because such employee has filed or communicated to the employer an intent to file a claim for compensation or

ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT – 10

exercises any rights provided under this title." But this provision does not prohibit an employer from taking action against an employee for other, non-discriminatory reasons. *See id.* To establish a prima facie case, Plaintiff must make the initial showing that he: "(1) exercised his workers' compensation rights, (2) was terminated, and (3) a casual connection between the two exists." *Nettleton v. United Parcel Serv., Inc.*, No. C19-1684-JCC, 2021 WL 197133, at *5 (W.D. Wash. Jan. 20, 2021); *see also Anica v. Wal-Mart Stores, Inc.*, 84 P.3d 1231, 1237 (Wash. App. 2004).

To establish a causal connection, the plaintiff must show "the employer's motivation for the discharge was the employee's exercise of or intent to exercise the statutory rights." *Wilmot v. Kaiser Aluminum & Chem. Corp.*, 821 P.2d 18, 29 (Wash. 1991) (en banc). To that end, Washington courts "hold that a plaintiff may establish the required case by showing that the worker filed a workers' compensation claim, that the employer had knowledge of the claim, and that the employee was discharged." Employers, particularly sophisticated employers such as Defendant, seldom openly announce a retaliatory motive, so plaintiffs often resort to circumstantial evidence. *Id.* Importantly, a plaintiff need not prove his employer's sole motivation was retaliation, only that retaliation was *a* cause of the termination. *Id.*

ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT – 11

1    It is undisputed that Plaintiff exercised his workers' compensation rights and

2    was subsequently terminated, establishing the first two prongs of a prima facie case.

3    The question then turns to whether Plaintiff can show a causal connection between

4    the two. As a beginning point, plaintiffs may establish causation by showing

5    temporal proximity between filing a workers' compensation claim and their

6    termination. *Id.* Here, the Court notes there is sufficient temporal proximity between

7    Plaintiff's 2018 workers' compensation claim and his termination. As noted,

8    Plaintiff filed his workers' compensation claim for his back injury in November of

9    2018. He then took medical leave from January of 2019 through August of 2019,

10    when he returned to light duty. Several months after his return to work, in October

11    of 2019, Plaintiff was terminated. While there is some length of time between

12    Plaintiff's claim and his termination, this temporal proximity is at least some

13    evidence of causation, though this factor may prove more difficult for Plaintiff at

14    later stages.

15    The Court is also satisfied that a triable issue remains regarding whether

16    Defendant had knowledge of Plaintiff's 2018 workers compensation claim.

17    Defendant's position to the contrary is unavailing. Although Mr. Edwards submits

18    that "[i]n reaching my decision to terminate Mr. Kuykendall's employment, I did

19    not consider—nor did I have personal knowledge of—the expenses incurred by Les

20    Schwab or its insurers in regard to Mr. Kuykendall's health insurance plan, benefits,

or workers compensation payments," ECF No. 33 at 2, the question at this juncture is only whether Mr. Edwards had knowledge that Plaintiff did in fact exercise his workers' compensation rights. Defendant does not argue that Mr. Edwards was entirely ignorant of the fact that Plaintiff filed a workers' compensation claim resulting in medical leave, only that Mr. Edwards was not aware of the associated expenses. In fact, it would be unsurprising if Mr. Edwards had noticed Plaintiff's seven-month absence, as such a lengthy absence is notable and apparent enough to reach even higher-level management.

Further, in determining whether to terminate Plaintiff, Mr. Edwards spoke with Ms. Bedell, who had access to Plaintiff's file containing his workers' compensation and medical leave records. Without speculating as to the content of their discussions, there is at least enough circumstantial evidence to create a triable issue of fact regarding whether Mr. Edwards—the purported decisionmaker—knew that Plaintiff had filed a workers' compensation claim in 2018 resulting in several months of medical leave. While Mr. Edwards denies having such discussions with Ms. Beddell, his credibility is not for the Court to determine at this stage.

### 2.    Burden shifting framework

"If the plaintiff presents a prima facie case, the burden shifts to the employer." *Wilmot*, 821 P.2d at 29. To satisfy its burden, Defendant must "articulate a legitimate nonpretextual nonretaliatory reason for the discharge." *Id.* It is

ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT – 13

1    undisputed that Plaintiff improperly removed company property that he was not

2    entitled to. On this point, Plaintiff has acknowledged that he took the air compressor

3    without the requisite permission and has further acknowledged that what he did was

4    "not right." ECF No. 54 at 14. Defendant then conducted an appropriate

5    investigation and terminated Plaintiff at least in part because of these actions. The

6    Court is therefore satisfied that Defendant has met its burden to articulate a

7    legitimate nonretaliatory reason for Plaintiff's discharge.

8         Once the employer meets its burden to articulate a legitimate basis for

9    discharge, "the burden shifts back to the plaintiff." *Wilmot,* 118 Wash. 2d 46, 70,

10   821 P.2d 18, 30 (1991). To meet his burden at this third stage, Plaintiff must show

11   that Defendant's articulated reason for discharge is pretextual. *Id.* In assessing

12   pretext, Washington courts use the "substantial" or "significant" factor test, under

13   which a plaintiff must prove that "retaliation was a substantial or important factor

14   motivating the discharge." *Id.* at 71. To do so, plaintiffs may show that despite the

15   employer's legitimate reason for termination, the plaintiff's "pursuit of or intent to

16   pursue workers' compensation benefits was nevertheless a substantial factor

17   motivating the employer to discharge the worker." *Id.* at 73. In showing pretext, a

18   plaintiff need not set forth a "smoking gun;" rather, circumstantial and inference

19   evidence is sufficient. *Renz v. Spokane Eye Clinic, P.S.*, 60 P.3d 106, 112 (Wash.

20   Ct. App. 2002).

ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT – 14

A plaintiff may discharge his burden through circumstantial evidence in several ways. One such way is by presenting evidence of inconsistencies. *Id*. at 112 ("Conflicting reasons or evidence rebutting their accuracy or believability are sufficient to create competing inferences."). Here, Plaintiff has presented cumulative evidence showing inconsistencies surrounding his termination and rehire date. First, there is conflicting testimony regarding whether Mr. Edwards consulted Mr. Gerke in making the decision to terminate Plaintiff. Mr. Edwards testified that himself, Mr. Gerke, and others "were all part of the initial evaluation, strategy, follow-up, options considered, and ultimately agreed on the course of action for both [Plaintiff and Mr. Merriott]." ECF No. 72 at 27. Yet, Mr. Gerke claimed he did not know who made the decision to terminate Plaintiff and denies having consulted with Mr. Edwards. ECF No. 73 at 14–15.

Plaintiff has also shown several inconsistencies involving Ms. Lynch and whether she was consulted about Plaintiff's termination. As a human resources employee, Ms. Lynch has access to Defendant's ADA List.[5] It appears undisputed that Plaintiff was on the list at some point while on medical leave. Plaintiff has shown several inconsistencies regarding whether Ms. Lynch was consulted before Plaintiff was terminated, which is of particular concern to the Court. First, Ms.

---

[5] Defendant's ADA List is a written list of employees who are on more than five months of medical leave, though these employees are removed from the list upon their return to work.

ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT – 15

Lynch claims to have not discussed Plaintiff at any point with Mr. Edwards, ECF No. 76 at 11, while Mr. Edwards claims the opposite, ECF No. 72 at 43. Furthermore, Ms. Graham testified that Ms. Lynch was in fact consulted regarding "the termination decision[]" for Plaintiff. ECF No. 74 at 11. While the Court will not speculate as to whether Ms. Lynch discussed Plaintiff's medical leave status with Mr. Edwards, the Court cannot reconcile Ms. Lynch's and Mr. Edward's competing statements regarding whether they discussed Plaintiff's termination at all.[6] This inconsistency is at least some evidence of pretext.

Deviations from existing policy or practice are evidence of pretext. *Wilmot*, 118 Wash. 2d 46, 74, 821 P.2d 18, 32 (1991). According to Ms. Graham, Defendant customarily uses an "employment advisory group"[7] to determine employee disciplinary action. ECF No. 74 at 6. Here, though, the employment advisory group did not meet to discuss Plaintiff's termination. *See id.* at 12. Plaintiff has also proffered Ms. Graham's testimony that when an employee is terminated for a code

---

[6] The Court notes that Ms. Lynch serves on Defendant's ADA List committee but does not have a "recollection of any specific discussions" involving Mr. Kuykendall while serving on the committee. ECF No. 76 at 9. Defendant describes this testimony as crucial. ECF No. 68 at 6. But this testimony does not have the impact Defendant suggests. Ms. Lynch did not testify that she did not have any discussions regarding Mr. Kuykendall's status on the list, only that she does not recall "specific discussions." ECF No. 76 at 9.

[7] Defendant's employee advisory group is "a group of senior leaders on the store operations side that typically are brought together to determine whether disciplinary action is appropriate…." ECF No. 74 at 6.

ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT – 16

of conduct violation, such as Plaintiff, the employee is immediately eligible for rehire. ECF No. 74 at 25. Yet Defendant deviated from this usual practice in terminating Plaintiff. As such, Plaintiff has proffered enough evidence to support a reasonable inference of pretext, and this claim must survive summary judgment.

**B.    Defendant is not entitled to summary judgment on Plaintiff's associational discrimination and ERISA retaliation claims.**

Under the American with Disabilities Act ("ADA"), employers are prohibited from "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association." 42 U.S.C. § 12112(b)(4). A prima facie case of associational discrimination requires the following elements: "(1) the plaintiff was subjected to an adverse employment action, (2) he was qualified for the job at that time, (3) his employer knew at the time that he had a relative with a disability, and (4) the adverse employment action occurred under circumstances that raised a reasonable inference that the disability of the relative was a determining factor in the employer's decision." *Bukiri v. Lynch*, No. SACV15894JLSDFMX, 2015 WL 13358192, at *3 (C.D. Cal. Sept. 9, 2015). If a plaintiff establishes a prima facie case and the defendant then articulates a legitimate, nondiscriminatory reason for the adverse employment action, the burden shifts to the plaintiff to show that this reason was a pretext for unlawful associational discrimination." *Id.*

ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT – 17

Similarly, Section 510 of the Employee Retirement Income Security Program ("ERISA") prohibits an employer from taking any adverse employment action against an employee "for exercising any right to which he is entitled under the provisions of an employee benefit plan...." 29 U.S.C. § 1140; *see also Kimbro v. Atl. Richfield Co.*, 889 F.2d 869, 880–81 (9th Cir. 1989). Unlawful retaliation occurs when "(1) an employee participates in a statutorily protected activity, (2) an adverse employment action is taken against him or her, and (3) a causal connection existed between the two." *Kimbro*, 889 F.2d 869, 881 (9th Cir. 1989). The same burden-shifting framework discussed above applies to ERISA retaliation claims. *See Teutscher v. Riverside Sheriffs' Ass'n*, No. ED CV-06-1208-RHW, 2010 WL 11509231, at *4 (C.D. Cal. Apr. 27, 2010).

### 1.    Prima facie case

Defendant submits that it is entitled to summary judgment on Plaintiff's associational discrimination and ERISA retaliation claims because Plaintiff cannot show Mr. Edwards was aware of his daughter's medical condition and associated costs and therefore Plaintiff cannot show causation for either claim. ECF No. 54 at 17. In support of this argument, Defendant's proffers Mr. Edwards' declaration, in which he states: "I do not have any personal knowledge of the medical expenses, benefits, or workers' compensation payments that Les Schwab or its insurer paid to

ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT – 18

or on behalf of Mr. Kuykendall, Mr. Kuykendall's daughter, or any other beneficiary." ECF No. 33 at 2.

Plaintiff responds that there is a genuine issue of material fact regarding Mr. Edwards' purported lack of knowledge. The Court agrees. First, Mr. Gerke testified that he interviewed Plaintiff just prior to his termination and Plaintiff "told [Mr. Gerke] that he needed his job because his daughter was sick." ECF No. 73 at 24. This comment was then memorialized in a report prepared by Mr. Gerke and sent to Mr. Edwards, though the parties dispute whether Mr. Edwards received or reviewed the report prior to Plaintiff's termination. *See* ECF No. 61 at 11; ECF No. 69 at 18. Still, it is undisputed that after Plaintiff told Mr. Gerke about his daughter's medical condition, Mr. Gerke and Mr. Edwards spoke on the phone regarding "whether [Plaintiff] was going to be terminated or not." *Id.* at 26. In particular, Mr. Gerke told Mr. Edwards "the details" of the interview and the "of the questions we asked and the answers they gave." *Id.*

Despite Mr. Gerke and Mr. Edwards' statements that they never discussed Plaintiff's daughter's medical condition prior to Plaintiff's termination, the Court finds that Plaintiff has shown a genuine issue of material fact as to whether Mr. Gerke's and Mr. Edward's protests are credible. First, it is undisputed that at some point Mr. Gerke transmitted the report discussing Plaintiff's daughter to Mr. Edwards. Though Mr. Edwards testified that he cannot recall when he reviewed it,

ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT – 19

he cannot say with certainty that the report was not transmitted or reviewed prior to Plaintiff's termination. ECF No. 72 at 43 ("[T]he earliest record that I have it that it was placed on my Google Drive January 20th, which I would *assume* is close to when I received it." (emphasis added)). Furthermore, Mr. Gerke found Plaintiff's statement about his daughter's illness material enough to include in his report about the interview, yet apparently did not convey her illness to Mr. Edwards when he communicated the details of the interview over the phone. It is for a jury to decide whether this account is credible.

Drawing all reasonable inferences in favor of Plaintiff, the Court finds that he has shown a genuine dispute of material fact regarding whether Mr. Edwards was aware of his daughter's medical condition prior to Plaintiff's termination.

### 2.    Burden shifting framework

The Court has already discussed the relevant burden shifting framework under Plaintiff's workers compensation retaliation claim, and the Court's assessment applies with equal force here. Briefly, though, the Court finds that Defendant has stated a legitimate nondiscriminatory reason for Plaintiff's termination: that Plaintiff removed Defendant's property without the requisite permission. And for the same reasons previously discussed, *i.e.*, inconsistencies and deviations from usual practice, the Court finds that Plaintiff has met his burden to

show a genuine dispute as to whether Defendant's proffered reason for his termination and rehire date is pretextual.

**C.    Defendant is entitled to summary judgment on Plaintiff's age discrimination claim.**

Defendant moves for summary judgment on Plaintiff's age discrimination claim, arguing that Defendant cannot establish a prima facie case. ECF No. 54 at 18. Upon review of the record, the Court agrees with Defendant and finds that it is entitled to summary judgment on this claim.

The Washington Law Against Discrimination ("WLAD") prohibits employers from discharging any employee on the basis of a protected characteristic, including age. Wash. Rev. Code 49.60.180(2). "To survive summary judgment, a plaintiff must demonstrate 'a reasonable jury could find that the plaintiff's protected trait was a substantial factor motivating the employer's adverse actions.'" *Nelson v. Washington State Bd. of Pilotage Comm'rs*, 11 Wash. App. 2d 1002 (2019) (quoting *Scrivener v. Clark Coll.*, 334 P.3d 541 (Wash. 2014) (en banc)). To do so, the plaintiff must demonstrate the protected characteristic served as a substantial factor motivating the employer's decision. *Id.*

Here, Plaintiff offers no evidence suggesting that a material dispute of fact remains regarding whether his age was a motivating factor in Defendant's decision to terminate his employment. Instead, Plaintiff insists that Defendant retaining other employees over the age of fifty is not dispositive. ECF No. 60 at 12. But Plaintiff

ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT – 21

still bears the burden to show a genuine dispute of material fact exists regarding his claim. *See Anderson*, 477 U.S. at 248–51. Even drawing all reasonable inferences in Plaintiff's favor, he has failed to meet his burden. The Court therefore grants Defendant summary judgment on Plaintiff's age discrimination claim.

**D.    Defendant is not entitled to summary judgment on Plaintiff's disability discrimination claim.**

Under both the ADA and WLAD, an employer may not discriminate against an employee because of his or her disability. Plaintiff's federal and state disability discrimination claims are governed by the now "familiar *McDonnell Douglas* burden-shifting framework." *Erickson v. Biogen, Inc.*, 417 F. Supp. 3d 1369, 1378 (W.D. Wash. 2019). "To set forth a prima facie disability discrimination claim under the ADA and WLAD, a plaintiff must establish that: (1) he is disabled[]; (2) he is qualified (i.e., able to perform the essential functions of the job with or without reasonable accommodation); and (3) the employer terminated him because of his disability." *Nunies v. HIE Holdings, Inc.*, 908 F.3d 428, 433 (9th Cir. 2018); *see also Erickson*, 417 F. Supp. 3d at 1378.

Defendant argues that Plaintiff cannot show the first factor—that he is disabled—because at the time of his termination, he had been released to work with no restrictions. ECF No. 54 at 20. Defendant is manifestly wrong. Even a cursory assessment of the ADA and WLAD's definitions of disability reveal that an

employee is considered disabled if he has a *record* of a physical or mental impairment. *See* 42 U.S.C. § 12102(2); Wash. Rev. Code § 49.60.040(7)(a).

As discussed in detail above, Plaintiff has a history of physical impairments resulting from workplace injuries—one of which necessitated a lengthy medical leave from work. Turning to the second factor, it is undisputed that Plaintiff was qualified to perform the essential functions of his job. Thus, the only remaining question is whether Defendant terminated Plaintiff because of his disability. The Court has discussed Plaintiff's physical disabilities in detail in assessing his workers' compensation retaliation claim and will not repeat its analysis here, except to note that for the same reasons identified above, Plaintiff has shown a genuine issue of material fact regarding whether he was terminated because of his history of workplaces injuries—*i.e.*, disabilities.

Accordingly, **IT IS HEREBY ORDERED**:

**1.** Defendant's Motion for Summary Judgment, **ECF No. 54**, is **GRANTED IN PART AND DENIED IN PART**.

    **A.** The Court grants Defendant summary judgment on Plaintiff's age discrimination claim only; the motion is otherwise denied.

//

//

//

ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT – 23

1    //

2    //

3        **IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and

4    provide copies to all counsel.

5        **DATED** this 23rd day of April 2022.

6

7        _____
        SALVADOR MENDOZA, JR.
        United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT – 24